IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATALIE M. JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-2278-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Plaintiff Natalie Johnson ("Johnson") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Johnson filed applications for a period of disability and disability insurance benefits under Title II of the Act and for supplemental security income benefits under Title XVI of the Act. In both applications, she alleged a disability beginning May 1, 2010 due to stuttering, fibromyalgia, depression, anxiety, panic attacks, pain, and carpal tunnel syndrome. Johnson was born on December 17, 1981, and was 28 years old on her alleged onset date. The Commissioner denied Johnson's applications initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Johnson is "not disabled." The

Appeals Council denied Johnson's request for review, and the ALJ's decision became the final decision of the Commissioner. Johnson now seeks judicial review.

In making her decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Johnson has not engaged in substantial gainful activity since May 1, 2010, her alleged onset date. At step two, the ALJ found that Johnson has severe impairments of depression, post traumatic stress disorder, anxiety, obsessive compulsive disorder, status post right shoulder dislocation and humeral head fracture, status post right carpal tunnel syndrom repair, degenerative disc disease, fibromyalgia with poly arthritis and poly arthralgias, migraines, and hypothyroidism. At step three, the ALJ found that Johnson's impairments fail to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Johnson has the following residual functional capacity ("RFC"):

> the claimant has the [RFC] to perform and sustain light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) requiring her to sit for six hours total in an eight-hour work day and stand or walk for six hours total in an eight-hour [work day]. She can lift and carry up to 20 pounds occasionally and ten pounds frequently with no above the shoulder lifting and carrying. She can occasionally bend, stoop, and crouch, and she cannot kneel, crawl, squat, climb ladders or work around unprotected heights. She can frequently but not constantly grasp, grip, handle and do fine manipulation. From a mental standpoint, she can perform work that is routine, repetitive and simple in nature, not complex or detail[ed] and no contact with the general public.

R. 32-33. At step four, the ALJ found that Johnson cannot perform her past relevant work in data entry (semi-skilled), or as a retail sales clerk and cosmetic sales clerk (semi-skilled).

At step five, where the burden shifted to the Commissioner, the ALJ found based on the vocational expert's ("VE's") testimony that Johnson is capable of performing other jobs existing in significant numbers in the national economy, such as inspector, production worker (garment sorter), and photocopy machine operator.  Accordingly, the ALJ found that Johnson has not been under a disability at any time between May 1, 2010 (the alleged onset date) and January 11, 2013 (the date of the ALJ's decision).

Johnson relies on three grounds to establish that the Commissioner's decision must be reversed: first, the ALJ's RFC finding is not supported by substantial evidence; second, the ALJ failed to give proper weight to the opinions of Johnson's treating physicians, Alan R. Hurschman, M.D. ("Dr. Hurschman") and Martin Kram, M.D. ("Dr. Kram"); and third, Johnson was prejudiced by the ALJ's errors.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its

judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step

- 4 -

sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history.

*Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.*  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

The court turns first to Johnson's contention that the ALJ's RFC determination is not supported by substantial evidence because she improperly rejected the opinion of Johnson's treating source, Dr. Hurschman, whose opinion is the only evidence discussing the effects of Johnson's physical condition on her ability to work.

A

The ALJ found that Johnson has the RFC to perform and sustain light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); to occasionally bend, stoop, and crouch, but not to kneel, crawl, squat, climb ladders or work around unprotected heights; and to frequently, but not constantly, grasp, grip, handle and do fine manipulation.  In reaching this conclusion, the ALJ rejected at least the opinion of one of Johnson's treating physicians, Dr. Hurschman.  In his October 17, 2012 medical source statement, Dr. Hurschman opined that—due to Johnson's multiple impairments (hypothyroidism, post traumatic stress disorder,

obsessive-compulsive disorder, migraines, fibromyalgia, and lumbar and cervical facet disease)—she can stand and/or walk continuously before alternating postures sitting or lying down for fewer than 15 minutes, and for less than one hour in an eight-hour work day; sit in a working position continuously before alternating postures standing or lying down for 15 minutes, and for less than one hour in an eight-hour work day; that, during an eight-hour work day, she reasonably requires 30 minutes per day of rest for pain management and 30 minutes per day of rest due to fatigue; that she can occasionally lift and/or carry up to 5 pounds and can rarely lift and/or carry 6 to 100 pounds; that she can rarely or never reach with her right arm, can occasionally reach with her left arm, and can never grasp or finger with either hand.  Johnson contends that Dr. Hurschman's medical source statement is the only opinion evidence of record that specifically discusses the effects of her physical condition on her ability to work.

Johnson maintains that the ALJ included none of Dr. Hurschman's opinions about her limitations in the RFC finding, and that the ALJ rejected Dr. Hurschman's opinion about Johnson's ability to sit, stand, walk, need for rest, lift, carry, and the use of her arms and hands.  She argues that, in rejecting the only medical opinion that addressed her RFC, the ALJ impermissibly attempted to glean for herself the effects of Johnson's impairments directly from the medical reports and treatment notes, overreaching her authority and exercising an expertise that the ALJ lacks.  In support, Johnson cites *Ripley* and other cases to argue that the ALJ may not rely on her own unsupported opinion as to the limitations presented by an applicant's medical conditions.  She posits that bare treatment records do not

clearly establish the effect of an impairment on the claimant's ability to work, and that an ALJ is not permitted to draw medical inferences on her own that no physician has expressed. Johnson also maintains that the ALJ's finding regarding RFC is not supported by substantial evidence because no physician opined that she can perform the exertional requirements (which the ALJ found she can perform) for light work.

The Commissioner responds that determining RFC is the sole responsibility of the ALJ; that the ALJ was not required to adopt Dr. Hurschman's medical opinion for her findings regarding Johnson's RFC to be supported by substantial evidence; that the ALJ is responsible for evaluating a claimant's RFC based on the record as a whole; and that the ALJ properly considered the entire record, and there is substantial evidence to support the ALJ's finding that Johnson is not disabled.

B

"Under the regulations and our case law, the determination of [RFC] is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam) (citing *Ripley*, 67 F.3d at 557). The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC "assessment is not a medical opinion." *Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 318 (5th Cir. 2003) (per curiam) (citing 20 C.F.R. §§ 416.946, 416.927(e)).

Although an evaluation by the claimant's treating physician should be accorded great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with . . . other substantial evidence," 20 C.F.R. § 404.1527(c)(2), "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted)).  An ALJ may give less weight or even no weight to a treating physician's opinion for good cause.  Statements that may be disregarded for good cause include those that are "so brief and conclusory that [they lack] persuasive weight, [are] not supported by medically acceptable clinical laboratory diagnostic techniques, or [are] otherwise unsupported by the evidence." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citations omitted).  "[T]he ALJ may discount, or even disregard entirely, the opinion of the treating physician." *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). But "an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions.  Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 Fed. Appx. 828, 832 n.6 (5th Cir. 2009) (per curiam).  Although the ALJ must adequately explain the reasons for her decision, her RFC determination can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports the decision or all the evidence that she rejects. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

## C

Johnson contends that the opinion of Dr. Hurschman, her treating source, is the only evidence that discusses the effects of her physical condition on her ability to work, and the

ALJ in reaching a different conclusion necessarily impermissibly attempted to glean the effects of Johnson's impairments directly from the medical reports and treatment notes.  The premise of Johnson's straightforward argument, if correct, would support reversal of the Commissioner's decision.  As noted above, "an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions."  *Williams*, 355 Fed. Appx. at 832 n.6 (citing *Ripley*, 67 F.3d at 557)).  But Johnson's contention is not supported by the record.  There is no indication in the ALJ's decision that she derived Johnson's RFC based *solely* on the evidence of her claimed medical conditions, or that the ALJ relied on her own unsupported opinion as to the limitations presented by Johnson's medical conditions.

The reasoning that the ALJ followed in support of her RFC determination was based on (1) consideration of all of Johnson's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, and (2) consideration of opinion evidence.

Concerning Johnson's symptoms, the ALJ followed a two-step process.  She determined, first, whether there was an underlying medically determinable physical or mental impairment that could be reasonably expected to produce Johnson's pain or other symptoms.  Once that determination was made, the ALJ evaluated, second, the intensity, persistence, and limiting effects of Johnson's symptoms to determine the extent to which they limited her functioning.  Regarding the second step, the ALJ recognized that, when statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were not

- 10 -

substantiated by objective medical evidence, she must make a finding concerning the credibility of the statements based on a consideration of the entire record.  The ALJ found that Johnson's medically determinable impairments could be expected to cause some of the alleged symptoms, but that her allegations of complete inability to work were not supported by the record.  The ALJ cited as an example that the medical evidence showed that Johnson's treatment had generally been successful in controlling her symptoms, but that she had refused treatment on multiple occasions and had not followed up with recommended counseling and treatment.  The ALJ found that this evidence tended to show that Johnson's symptoms may not have been as serious as had been alleged.  And the ALJ found that at least one physician had noted that Johnson exhibited medications-seeking behavior.  The ALJ also found that Johnson had made somewhat inconsistent statements regarding her most recent injury, suggesting that the information she provided generally may not have been entirely reliable.  She found that limitations should be assessed to Johnson's RFC, but that Johnson's allegations of being totally precluded from work-related activities were not fully credible, to the extent alleged.

Concerning opinion evidence, the ALJ recognized that the opinion of a treating physician is entitled to great weight when supported by objective medical evidence and consistent with other substantial evidence of record.  But the ALJ also acknowledged the limitations on opinions expressed by physicians concerning issues that are reserved for the Commissioner.  Citing Dr. Hurschman specifically, she noted that he had initially treated Johnson in February 2012 and in October 2012; that he had opined that, since May 2010,

Johnson had multiple disabling limitations; that this pessimistic assessment was not borne out by the treatment records; and that his opinion was rendered less persuasive because it was without substantial support from other evidence of record.

After discussing the opinion of Dr. Kram on non-exertional limitations, the ALJ concluded that, although Johnson might experience some degree of discomfort and depressive symptomatology that are at times incompatible with performing certain levels of sustained work activity, neither the objective medical or non-medical evidence established that her ability to function was so severely impaired as to preclude unskilled work at the light level of exertion, and that this RFC assessment was supported by the medical evidence of record.

As is apparent from the foregoing summary of the ALJ's decision, the ALJ did not derive Johnson's RFC based *solely* on the evidence of her claimed medical conditions, or rely on her own unsupported opinion as to the limitations presented by Johnson's medical conditions. Moreover, the ALJ properly rejected the opinion of Dr. Hurschman based on her finding that his assessment was not borne out by the treatment records and that it lacked substantial support from other evidence of record.

The court therefore concludes that Johnson has failed to demonstrate that the ALJ improperly rejected the opinion of Johnson's treating source, Dr. Hurschman, and, consequently, that the RFC determination is not supported by substantial evidence.

IV

Johnson contends as her second ground for reversal that the ALJ improperly rejected the opinions of Drs. Hurschman and Kram, her treating physicians, without acknowledging the important legal principle that the Commissioner will always give greater weight to a treating source's opinion even if that opinion is inconsistent with other substantial evidence.

A

Johnson maintains that, by regulation and by statute, the Commissioner will always consider and evaluate the medical opinions received in the applicant's case and will generally give more weight to opinions from treating sources; when a treating source's medical opinion is not entitled to controlling weight, it is still entitled to deference and may be entitled to the greatest weight; when a treating source has seen a claimant for long enough to develop a longitudinal picture, the agency will always give greater weight to the treating source's opinion than to the opinions of non-treating sources, even if the other opinions are also reasonable or even if the treating source's opinion is inconsistent with other substantial evidence of record; agency rules provide that special weight is accorded to the opinions of a claimant's treating physicians; in finding that controlling weight should not be assigned to Drs. Kram's and Hurschman's source statements, the ALJ failed to recognize that their opinions were still entitled to deference; the ALJ found that Dr. Hurschman's "pessimistic assessment" was not borne out by the treatment records and was without substantial support, but she did not cite contradictory evidence; the ALJ did not identify what abnormalities she expected to find, or the medical basis for this conclusion; the ALJ made an overarching and

- 13 -

foundational error by failing to recognize the special deference that must be accorded to treating source opinions when they are not accorded controlling weight; the ALJ's failure to explicitly acknowledge this crucial legal principle strongly suggests that she did not apply the proper legal standard when evaluating treating source opinions and she incorrectly weighed the medical opinions of record; objective evidence supported Dr. Hurschman's medical source statement; he evaluated Johnson for pain management related to neck, low back, shoulder, leg, wrist, and general joint pain and was asked to evaluate her headaches; he documented head and facial pain, limited neck range of motion, positive Patrick sign, limited low back range of motion, cervical (neck) and lumbar (low back) muscle spasms, and limited left shoulder range of motion; he noted cervical spine facet compression signs were strongly positive; facet arthropathy was confirmed by the neck and low back MRIs; he performed low back medial branch nerve blocks on February 15, 2012 and March 5, 2012; because Johnson reported no pain relief, he tried radio frequency ablation on the low back in June 2012, and, although she achieved some relief, her pain returned to a baseline 8/10 by September 2012; examination continued to show positive signs and muscle spasms, and he performed a lumbar epidural steroid injection as the next treatment option; and, on the same day he completed his source statement, he also gave Johnson a botox injection in the neck and face to help with her migraine headaches.  Johnson contends that none of this evidence contravened Dr. Hurschman's opinion that Johnson's impairments caused significant limitations in her ability to work, and no other examining or reviewing physician gave an opinion that contravened his opinion.

Regarding Dr. Kram, Johnson maintains that the ALJ's lay expectations are not substantial evidence. She posits that, without a clear explanation, the ALJ found that Dr. Kram's records did not document expected findings. Johnson contends that Dr. Kram saw her nine times from September 2011 through January 2013; that his records, while difficult to read, document only a partial response to medications, which required changes in medications or dosages, and abnormal mental status examinations; at Dr. Kram's last recorded visit, he described Johnson as sabotaging her own treatment by seeking to get back with her abusive husband; Johnson's mother described her as incapable of making logical decisions; Johnson became angry and wanted to fire Dr. Kram, but later relented; and that this type of outburst was commonly reported by other treatment sources, such as Metrocare and Parkland; although the ALJ faulted Dr. Kram for apparently inconsistent responses, she does not comment on the similarly inconsistent responses of Dr. Reedy (the State Agency reviewing psychiatrist), who believed that Johnson was limited in her ability to maintain attention and concentration for extended periods and work in coordination or proximity to others, but inexplicably concluded that Johnson could work with others for long periods of time; Dr. Kram also opined that Johnson was limited in these same identified areas, albeit at a more severe level; and given that Dr. Kram had a longitudinal treating relationship, the ALJ's failure to recognize and accord deference was erroneous.

Johnson concludes that, had the ALJ properly applied the law and recognized the deference due to treating source opinions, Drs. Hurschman's and Kram's limitations would have been given greater weight.

The Commissioner responds that the ALJ properly weighed the opinions of Drs. Hurschman and Kram; the ALJ properly discounted Dr. Hurschman's medical source statement because it was not supported by the treating records and was unsupported by substantial evidence; the ALJ properly discounted Dr. Kram's medical source statement because it was not only inconsistent with other medical records, but also internally inconsistent; and the ALJ was entitled to discount both physicians' medical source statements because they were merely conclusory check-box forms, which are entitled to little weight.

B

As a threshold matter, the court disagrees with Johnson that the ALJ failed to acknowledge the Commissioner's policy regarding the weight and deference to be given to treating source opinions.  The ALJ began her discussion of the opinion evidence pertinent to her RFC determination by stating: "[t]he opinion of a treating physician is entitled to great weight when supported by objective medical evidence and consistent with other substantial evidence of record."  R. 34.  Nor is there cause to reverse based on the ALJ's failure to discuss explicitly the deference that is due a treating source's opinion that is not given controlling weight.  Although the court benefits from more detailed decisions when conducting judicial review, it reviews the ALJ's judgment, not her opinion.  *See LeCoq v. Barnhart*, 3:04-CV-0825-D, slip op. at 10 (N.D. Tex. Aug. 24, 2005) (Fitzwater, J.) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)) (stating "[t]he statute requires us to review the quality of the evidence . . . not the quality of the ALJ's literary skills.").  "The ALJs work under great burdens.  .  .  .  When they slow down to write better opinions, that

- 16 -

holds up the queue and prevents deserving people from receiving benefits." *Id.* at 10-11 (quoting *Stephens*, 766 F.2d at 287).  It is not apparent from any other part of the ALJ's decision that she failed to give proper deference to the opinions of Johnson's treating sources, Drs. Hurschman and Kram.   And the ALJ's failure to discuss explicitly the deference due their opinions does not compel the court to conclude that she failed to give the opinions proper deference. *See Murphy v. Barnhart*, No. 3:02-CV-2741-D, slip op. at 10-11 (N.D. Tex. Feb. 9, 2004) (Fitzwater, J.) ("The ALJ may not have written a flawless opinion that expresses in great detail the way he reached his conclusions in this case, but his finding and conclusions provide a sufficient basis for the court to follow his reasoning and determine that he traveled an acceptable analytical path."); *Anderson v. Barnhart*, No. 3:02-CV-2123-D, slip op. at 12 (N.D. Tex. June 23, 2003) (Fitzwater, J.) ("The ALJ may not have written a flawless opinion that expresses in great detail the way he reached his conclusions in this case.  Nevertheless, the opinion does provide a sufficient basis for the court to follow his reasoning and determine that he followed an acceptable analytical path.").

C

Nor does the court agree with Johnson's assertion that the ALJ reversibly erred in deciding the weight to be given to the opinions of Drs. Hurschman and Kram.  As the court has explained above, an ALJ can reject the opinion of a treating physician that is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *See Scott*, 770 F.2d at 485.

Initially, when conducting her step three analysis—i.e., whether Johnson's

impairments met or equaled an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1—the ALJ described in detail Dr. Hurschman's findings and the history of his pain management treatment of Johnson.  The ALJ noted that Dr. Hurschman first treated Johnson on February 6, 2012; that he continued to treat Johnson through at least October 17, 2012, when he completed his medical source statement; that his treatment of her included lumbar facet joint medial branch nerve blocks with fluoroscopy and a lumbar radio frequency ablation of the facet joint medial branch nerves with fluoroscopy; that he diagnosed her with lumbar degenerative disc disease and lumbar spondylosis on September 12, 2012; and that he treated her with a lumbar epidural steroid injection.  The ALJ also summarized Dr. Hurschman's assessments in his medical source statement.

The ALJ also described Dr. Kram's treatment and opinions.  She noted that Dr. Kram had first examined Johnson on September 2, 2011, and that he later diagnosed her as having recurrent major depressive disorder, posttraumatic stress disorder, chronic panic disorder, and attention deficit hyperactivity disorder, and assessed a GAF score of 59-60.  The ALJ noted that Dr. Kram's followup treatment of Johnson included medications, and the ALJ summarized Dr. Kram's assessment contained in his medical source statement.

At step five, the ALJ determined that Johnson has the RFC to do the following: sit for six hours total in an eight-hour work day and stand or walk for six hours total in an eight-hour work day; lift and carry up to 20 pounds occasionally and ten pounds frequently with no above the shoulder lifting and carrying; occasionally bend, stoop, and crouch, but not kneel, crawl, squat, climb ladders, or work around unprotected heights; grasp, grip, handle

and do fine manipulation; perform work that is routine, repetitive, and simple in nature, not complex or detailed and that does not involve contact with the general public.  In determining Johnson's RFC, the ALJ first discussed Johnson's treatment records, noting that the medical evidence showed that her treatment had been generally successful in controlling her symptoms; that Johnson had refused treatment on multiple occasions; and that she did not follow up with recommended counseling and treatment, demonstrating that her symptoms may not have been as serious as she alleged.  The ALJ also discussed Johnson's credibility, pointing out that at least one physician had noted that Johnson exhibited medications-seeking behavior, and that her statements regarding her shoulder injury were somewhat inconsistent.

The ALJ then discussed Dr. Hurschman's and Dr. Kram's opinions.  She noted that Dr. Hurschman had initially treated Johnson in February 2012 and in October 2012; that he had opined that, since May 2010, Johnson had multiple disabling limitations; that this pessimistic assessment was not borne out by the treatment records; and that his opinion was rendered less persuasive because it was without substantial support from other evidence of record.  Concerning Dr. Kram's opinion, the ALJ noted that, although Dr. Kram opined that Johnson had an extreme loss of function in multiple areas, his own reports failed to reveal the type of significant clinical and laboratory abnormalities that would be expected if Johnson were in fact disabled.  The ALJ also concluded that the course of treatment that Dr. Kram had pursued had not been consistent with what would be expected if Johnson were disabled.  Finally, the ALJ also noted that Dr. Kram's report appeared to contain inconsistencies, because he reported that Johnson had an extreme loss of ability to maintain

attention and concentration for extended periods, but that she was capable of consistently applying commonsense understanding to carry out instructions and sustain ordinary routine without special supervision.  The ALJ therefore determined that Dr. Kram's opinion was less persuasive.

The ALJ found that neither the objective medical or non-medical evidence established that Johnson's ability to function is so severely impaired as to preclude unskilled work at the light level of exertion.

The court holds that the ALJ had good cause to discount Dr. Hurschman's opinion, and that she gave sufficient reasons to support her decision.   After reviewing Dr. Hurschman's opinions and Johnson's other treatment records, the ALJ concluded that Dr. Hurschman's pessimistic assessment that Johnson had multiple disabling limitations was not borne out by the treatment records and was without substantial support from the other evidence of record, and, in fact, that much of the record evidence conflicted with Dr. Hurschman's opinions about Johnson's physical impairments and their impact on her RFC. Dr. Hurschman opined in his medical source statement that Johnson's physical impairments were so disabling as to prevent her from standing, walking, or sitting for more than one hour in total in an eight-hour work day.  But other treatments records indicated that Johnson had painless range of motion in her neck, no vertebral tenderness, no back tenderness, and normal range of motion in her back; that her pain from fibromyalgia was significantly improved; that she could walk without difficulty; and that, after a hospitalization for sepsis in March 2013, she was able to return home with full activity and no restrictions regarding her mobility.

Further, Johnson's testimony at the hearing before the ALJ that she prefers not to lie down while her son is at home suggests that she is capable of standing, walking, or sitting for more than one hour total in an eight-hour work day. Because there was contrary evidence in the record and the ALJ had adequate grounds to find that Dr. Hurschman's opinion in this respect was not "well-supported," the ALJ was not obligated to give controlling weight or even special deference to Dr. Hurschman's opinion of Johnson's physical RFC.

As with Dr. Hurschman's opinions, Johnson does not contend that the ALJ should have given Dr. Kram's opinions controlling weight, but that the ALJ erred in failing to give them special deference, instead relying merely on her own lay expectations to support her conclusion that Dr. Kram's opinions were less persuasive. The court concludes that the ALJ had an adequate basis in the record to discount Dr. Kram's opinions, and that her decision adequately explains her reasons for doing so.

For example, in evaluating Dr. Kram's opinions, the ALJ noted that Dr. Kram's report was internally inconsistent in that it stated that Johnson had an extreme loss of ability to maintain attention and concentration for extended periods, but also concluded that she was still capable of carrying out instructions and sustaining ordinary routine without supervision. The ALJ also stated that Dr. Kram's reports did not reveal the type of significant clinical and laboratory abnormalities that would be expected if Johnson were disabled. And the ALJ cited the fact that Johnson had refused treatment on multiple occasions and did not follow up with recommended counseling and treatment, suggesting that her symptoms may not have been as severe.

Other record evidence also supports the ALJ's questioning of Dr. Kram's conclusions. Treatment records from 2010 reflect that Johnson had no sign of psychotic features, that she was not delusional, and that her thought processes were organized. There is also evidence in Johnson's treatment records that her anxiety and depression were treated effectively with medication, and that her impulse control and ability to interact with others was improved in May 2011. Considered together, the inconsistencies within Dr. Kram's statement and the other contradictory evidence of record constitute sufficient good cause for the ALJ to discount Dr. Kram's assessment of Johnson's mental RFC. The court therefore concludes that the ALJ did not err in declining to give Dr. Kram's opinions special deference.

Accordingly, the court concludes that the ALJ did not err in weighing the opinions of Drs. Hurschman and Kram.

V

Johnson argues as her third ground that the Commissioner's decision must be reversed because she was prejudiced by the ALJ's errors. She maintains that the ALJ's hypothetical question to the VE at step five presented only the ALJ's unsupported physical limitations, and that the VE's testimony therefore is not substantial evidence to carry the Commissioner's burden at step five. Because Johnson has failed to demonstrate that the ALJ erred or that her RFC determination is not supported by substantial evidence, the court need not decide whether the ALJ committed reversible error.

- 22 -

\*    \*    \*

For the reasons explained, the Commissioner's decision is affirmed.

June 4, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE